# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CHARLES J. LEVERT, II, as *Personal Representative of the Estate of Charles J. Levert, Sr.*, <br><br> Plaintiff, <br><br> v. <br><br> MONTEFIORE HOME, *et al.*, <br><br> Defendants. | CASE NO. 1:21-cv-02312 <br><br> JUDGE DAVID A. RUIZ <br><br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Charles J. Levert, II, as the personal representative of the Estate of the deceased Charles J. Levert, Sr., filed wrongful death and survivorship claims in the Cuyahoga County Court of Common Pleas alleging violations of Ohio law against a nursing home and its employees. (R. 1-2). The Complaint alleges that Defendants, by their acts and/or omissions, caused the death of Charles J. Levert, Sr., a resident of Defendants' nursing facility who had contracted and passed away from COVID-19. *Id*. Along with allegations that the nursing home staff was improperly trained and short-staffed due to the prioritization of budgetary concerns above patient welfare, the main thrust of the Complaint is that Defendants either failed to or improperly implemented COVID-19 prevention measures, and, moreover, allegedly falsified

COVID test results and/or concealed positive test results from residents and their families. *Id*. In other words, it is alleged that Defendants engaged in a deliberate practice of concealing the positive COVID-19 test results of dozens of nursing home residents and that Plaintiff detrimentally relied on these misrepresentations. *Id*. Plaintiff alleges that the misrepresentation as to the COVID-19 status of dozens of Defendants' residents "was material to the decision of Decedent Charles J. Levert, Sr. and his family to keep Decedent Charles J. Levert, Sr. at The Montefiore Home." (R. 1-2, PageID# 22).

Defendants removed to federal court based on federal question jurisdiction.[1] (R. 1). Subsequently, Plaintiff filed a motion seeking remand to state court (R. 7), which resulted in briefs in opposition and a reply. (R. 8, 9 & 10). For the reasons explained below, the Court GRANTS Plaintiff's motion to remand to State Court. (R. 7).

## I. Standard of Review

Defendants may remove a civil action from a state court *only* where a federal court has original jurisdiction over the claims alleged in the state court complaint. 28 U.S.C. § 1441(a). In other words, only those state-court actions are removable that "could have been filed in federal court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Absent jurisdiction based upon diversity of citizenship (28 U.S.C. § 1332),[2] federal question jurisdiction under 28 U.S.C. § 1331

---

[1] Defendants asserted that the case was removable under 28 U.S.C. § 1441(a) pursuant to the Court's "original jurisdiction" under 28 U.S.C. § 1331. (R. 1 at PageID# 2; ¶ 4). Defendants claim that the instant action arose under the federal Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d (the "PREP Act"), which they claim preempts Plaintiff's state law claims. (*Id*. at ¶¶ 5-10). Defendants also argue this case is removable under the Federal-Officer-Removal Statute, 28 U.S.C. § 1442(a)(1), because the nursing home and its employees were acting as federal officers and/or agencies. (*Id*. at ¶ 11).

[2] There is no assertion in this case that federal jurisdiction can be based on the diversity of the parties.

is required. *Id.*

"The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006) (citing *Conrad v. Robinson*, 871 F.2d 612, 614 (6th Cir. 1989)). "[T]he removal statute should be strictly construed and all doubts resolved in favor of remand." *Id*. (*quoting Brown v. Francis*, 75 F.3d 860, 864–65 (3d Cir. 1996)).

Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "arises under" federal law if: (1) "federal law creates the cause of action[,]" or (2) "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.*, 482 U.S. at 392 (*citing Gully v. First National Bank*, 299 U.S. 109, 112–113 (1936)). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id*.

Here, there is no dispute that the Complaint itself relies solely on state law. That, however, does not end the matter as exceptions exist to the "well-pleaded complaint rule." *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6-9 (2003) (discussing exceptions to the rule). The potentially relevant exception here is the complete preemption doctrine. Under this doctrine, "removal is proper 'when a federal statute wholly displaces the state-law cause of action through complete pre-emption.'" *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007)

(citations omitted).

## II. Analysis

Defendants assert the Court "has federal question jurisdiction over this case because the PREP Act completely preempts, displaces, and provides a substitute for Plaintiff's state-law claims." (R. 8, PageID# 121). At the outset, the Court notes that Defendant Montefiore has been the subject of numerous lawsuits by various residents that have raised nearly identical allegations in their respective complaints, specifically the falsification of positive COVID tests and/or the concealment of the number of residents with COVID-19. These actions have all been removed from State Court by Defendants to this Court. In no less than six decisions covering such cases, the plaintiffs therein have sought remand to State Court, which Defendants have opposed on the same grounds as argued here. In every one of these decisions, the Court has granted the plaintiffs' motions for remand. *See Nemeth v. Montefiore*, 2022 WL 4367165 (N.D. Ohio Sept. 21, 2022) (Fleming, J.); *Friedman v. Montefiore*, 2022 WL 3584481, at *1 (N.D. Ohio July 11, 2022) (Lioi. J.); *Estate of Spring v. Montefiore Home*, 2022 WL 1120381 (N.D. Ohio Apr. 14, 2022) (Barker, J.); *Burris v. Montefiore*, 2022 WL 1120374 (N.D. Ohio Apr. 14, 2022) (Barker, J.); *Wimberly v. Montefiore*, 2022 WL 1120394, at *1 (N.D. Ohio Apr. 14, 2022) (Barker, J.); *Rosen v. Montefiore*, 582 F. Supp. 3d 553, 558 (N.D. Ohio 2022) (Gwin, J.); *Singer v. Montefiore*, 577 F. Supp. 3d 633, 638 (N.D. Ohio 2021) (Calabrese, J.). After reviewing these decisions, the Court agrees with their sound reasoning, and, in the interests of judicial economy, offers only a succinct analysis.

### A. The PREP Act

When the Secretary of the Department of Health and Human Services (HHS) declares a public health emergency, the PREP Act provides that covered persons "shall be immune from

suit and liability under Federal and State law" for "all claims for loss caused by, arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure." 42 U.S.C. § 247d-6d.[3]

As detailed in the above cited decisions, in March of 2020, the HHS Secretary designated the Covid-19 pandemic a public health emergency under the PREP Act and recommended medical countermeasures to prevent or mitigate the spread of the disease.[4] The declaration identified the covered countermeasures as, "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 … or any device used in the administration of any such product, and all components and constituent materials of any such product." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 FR 15198-01 (March 17, 2020) (hereafter "Declaration").

As recounted above, though the Complaint raises a multitude of assertions, most relevant to the PREP Act issue is Defendants' alleged falsified Covid-19 tests and the alleged concealment of the number of nursing home residents who were Covid positive. The Court agrees with the decisions above that none of Plaintiff's claims fall under the PREP Act. Plaintiff

---

[3] The only exception to this immunity is claims "for death or serious physical injury proximately caused by willful misconduct," 42 U.S.C. § 247d-6d(d)(1), but even willful misconduct claims must involve the "administration" or "use" of a "covered countermeasure" before it will fall under the PREP Act. *See, e.g., Singer*, 577 F. Supp. 3d at 640 ("Put another way, the path to the exception in subsection (d) of the statute runs through subsection (a), which requires covered countermeasures.")

[4] *See also* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 FR 15198-01 (March 17, 2020) ("The Secretary is issuing this Declaration pursuant to section 319F-3 of the Public Health Service Act to provide liability immunity for activities related to medical countermeasures against COVID-19.")

has *not* asserted that the decedent's death was "caused by, arose out of, related to, or resulted from" the "administration" or "use" of "covered countermeasures." To the extent Plaintiff's claims are based on inaction or inadequate action by Defendants, these do no fall within the scope of the PREP Act, as the HHS Secretary defined the "administration" of a covered countermeasure as the "physical provision of the countermeasures to recipients…." Declaration, 85 FR 15198-01:38.[5]

    Finally, the Court wholly agrees with the above decisions that find falsifying Covid-19 test results is not the "administration" or "use" of a covered countermeasure. Indeed, the Complaint cannot reasonably be construed as arguing that Defendants improperly administered the Covid-19 tests or that the decedent's harm was caused by the administration of a Covid test. Instead, the essence of the Complaint is that Defendants falsified results after Covid diagnostic tests had been administered in order to conceal the number of nursing home residents who had tested positive. Such conduct is not contemplated to be within the scope of the Act. The Complaint merely referencing Covid testing, specifically the falsification thereof, is not the equivalent of alleging "improper use" or "administration" of Covid-19 diagnostic tests. Here, Plaintiff does not allege that his father was injured due to Defendants' improper "administration" or "use" of a Covid test. As explained in *Wimberly*, "it is irrelevant whether any COVID-19 tests were physically provided in the first place because, according to [the plaintiff's] Complaint,

---

[5] The Court agrees with the analysis in *Wimberly*, 2022 WL 1120394, and the cases cited and quoted therein, which observe that the PREP Act was "designed to protect those who employ countermeasures, not those who decline to employ them." Indeed, if the Court were to credit Defendants' position, it would lead to the untenable result that "patients whose healthcare providers did nothing would have worse recourse to compensation than patients whose healthcare providers tried in good faith to apply covered countermeasures. This result could not have been intended by Congress." *Id*. (citing *Segel v. Sunray Healthcare Ctr.*, 2021 WL 5755639, at *2 (C.D. Cal. Dec. 2, 2021)).

Defendants' test results were intentionally faked and entirely unrelated to the actual test result. Thus, it cannot be said that Defendants' fake test results 'related to' the administration of a covered countermeasure." 2022 WL 1120394 at *5.

Because the allegations in the Complaint do not relate to the administration or use of covered countermeasures, the Court concludes that Plaintiff's claims do not fall within the scope of the PREP Act resulting in a lack of federal question jurisdiction. Consequently, because the Court finds that Plaintiff's claims do not fall within the scope of the PREP Act, the Court need not decide whether the PREP Act is a completely preemptive statute.

**B. Federal Officer Removal**

In Defendants' opposition to Plaintiff's motion to remand, Defendants argue these cases are also removable under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1). (R. 8, PageID# 129-130).

Because Defendants are not in actuality federal officers,[6] to come within the scope of the statute they must satisfy a three-pronged test in order to be entitled to removal under §1442(a)(1).

> First, [defendant] must establish that it is a "person" within the meaning of the statute who "act[ed] under [a federal] officer[.]" 28 U.S.C. § 1442(a)(1). Second, [defendant] must demonstrate that it performed the actions for which it is being sued "under color of [federal] office[.]" *Id*. Third, [defendant] must show that it raised a colorable federal defense. *See Jefferson County v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999); *Lay v. Burley Stabilization Corp.*, 312 Fed.Appx. 752, 759 (6th Cir. 2009) (unpublished) (Moore, J. concurring); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008).

*Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010).

---

[6] "The nursing homes are private parties, not federal actors. They may nevertheless invoke federal-officer removal if they show they were 'acting under' federal officers." *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 404 (3d Cir. 2021).

The disputed element in this case is the first "acting under" requirement. Although the phrase "acting under" in § 1442(a)(1) is "broad" and must be "liberally construed," it is not limitless. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). Private participants in a highly regulated industry, such as nursing care facilities, "cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id*. at 153; *accord Maglioli*, 16 F.4th at 404 ("Merely complying with federal laws and regulations is not 'acting under' a federal officer for purposes of federal-officer removal"). Defendants' assertion—that nursing homes have a special relationship with the federal government in which they provide an essential service on the government's behalf especially in the COVID-19 public health emergency—is wholly inconsistent with *Watson*.

Therefore, Defendants cannot remove these cases to federal court under § 1442(a).

### III. Conclusion

For the foregoing reasons, Plaintiff's motion to remand to state court (R. 7) is hereby GRANTED. The case is REMANDED to the Cuyahoga County Court of Common Pleas from which it was removed.

IT IS SO ORDERED.

                                                     s/ *David A. Ruiz*
                                                     David A. Ruiz
                                                     United States District Judge

Date: September 30, 2022